UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ROSE M. WILLIAMS, | ) | Case No. 18-12940-BFK |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ROSE M. WILLIAMS, | ) | Adversary Proceeding |
| | ) | No. 23-01001-BFK |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| SELENE FINANCE LP, | ) | |
| US BANK TRUST, NAT'L ASSN., | ) | |
| RCF 2 ACQUISITION TRUST, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This adversary proceeding comes before the Court on two Motions. The Defendants, Selene Finance LP ("Selene") and U.S. Bank National Association as Trustee for RCF2 Acquisition Trust ("U.S. Bank"), have filed a Motion to Dismiss for Lack of Standing or, in the Alternative, for Summary Judgment. Docket No. 28. The Plaintiff, Rose Williams (also referred to herein as the "Debtor"), has filed an Opposition to the Defendants' Motion. Docket No. 29. Additionally, the Plaintiff has filed a Motion for Summary Judgment, which the Defendants oppose. Docket Nos. 27, 31. For the reasons stated below, the Court will grant the Defendants' Motion and will deny the Plaintiff's Motion.

1

**Undisputed Facts**

The Court finds that the following facts are not genuinely disputed.

1. The Plaintiff, Rose Williams, filed a Voluntary Petition under Chapter 13 with this Court on August 28, 2018. Case No. 18-12940-BFK, Docket No. 1.

2. The Court confirmed her Amended Plan on March 28, 2019. *Id.* at Docket Nos. 31, 34.

3. The confirmed Plan required the Debtor to pay $450.00 per month for 12 months, and $1,300.00 per month for 48 months, for a 60-month plan. Docket No. 31, at ¶ 2. The Debtor's last plan payment was due in August 2023.

4. The confirmed Plan also called for the Debtor to retain her property at 14855 Daytona Court Woodbridge, VA 22193. She was to continue to pay the monthly mortgage post-petition directly to the mortgagee and to pay a modest arrearage amount of $370.54 through the Chapter 13 Trustee. *Id.* at ¶ 6(A).

5. When she filed the case, Seterus, Inc. was the subservicer for Federal National Mortgage Association ("Fannie Mae"). Seterus filed a Proof of Claim in the amount of $296,559.67, with $1,261.02 in pre-petition arrearages, secured by the Daytona Court property. Proof of Claim No. 7-1.[1]

---

[1] The Court can take judicial notice of matters on its own docket. *In re Heilig-Meyers Co.*, 328 B.R. 471, 488–89 (E.D. Va. 2005); *In re Rivera,* Adv. Pro. No. 13–01280, 2014 WL 287517, at *2 n.2 (Bankr. E.D. Va. Jan. 27, 2014); *In re Ryan*, 472 B.R. 714, 727–28 (Bankr. E.D. Va. 2012); *In re Giordano*, 472 B.R. 313, 335 n.15 (Bankr. E.D. Va. 2012).

6. The loan was transferred to Nationstar Mortgage, LLC, d/b/a Mr. Cooper, and in March 2022, to U.S. Bank. *Id.* (Transfers of Claim No. 7).

7. The Plaintiff alleges that once the loan was transferred to U.S. Bank, Selene as U.S. Bank's servicer, began sending monthly mortgage statements to her counsel and not directly to her. Both Ms. Williams and her counsel requested Selene to send the monthly mortgage statements directly to her. Docket No. 27, Plaintiff's Memorandum in Support, Exs. 4, 6, 7.

8. In a letter dated May 16, 2022, Debtor's counsel expressly consented to Selene communicating directly with the Debtor. *Id*. at Ex. 4.

9. Despite these requests, Selene continued to send the monthly mortgage statements to her counsel, through February 2023. *Id*. at Ex. 2.[2]

10. The Chapter 13 Trustee has filed a Notice of Final Cure Payment in Ms. Williams' bankruptcy case, stating that the mortgage cure amount has been paid in full. Docket No. 76. More than 21 days has elapsed, and Selene has not objected to the Trustee's Notice.

11. The Debtor filed this Adversary Proceeding against Selene and U.S. Bank on January 10, 2023. Case No. 23-01001-BFK, Docket No. 1.

12. Ms. Williams does not allege that she was threatened with foreclosure, that she missed any mortgage payments, or that she incurred any late fees, as a result of Selene sending the periodic statements to her attorney.

## Conclusions of Law

---

[2] The monthly mortgage statements for the months of April 2022 through February 2023, attached to the Plaintiff's Memorandum as Exhibit 2, indicate that they were mailed to counsel, not to Ms. Williams. Docket No. 27, Plaintiffs' Memorandum in Support, Ex. 2.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a non-core, "related to" proceeding under 28 U.S.C. § 157(c)(1). The Defendants have consented to the entry of final orders by this Court. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670-71 (2015). *See also* Docket No. 3, Initial Scheduling Order, ¶ 5 ("Any party not consenting to the entry of a final order by the Bankruptcy Judge shall file a Motion to withdraw the reference or for other appropriate relief within 30 days of the entry of this Scheduling Order, and shall promptly set the matter for a hearing. The failure to comply with the terms of this paragraph shall be deemed to constitute consent to the entry of final orders by the Bankruptcy Judge.")

### I.   The Standard on Summary Judgment.

The matter is before the Court on cross Motions for Summary Judgment. Summary judgment is appropriate where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056. The moving party has the initial burden of showing that there are no material facts in dispute, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). When the moving party has met its initial burden, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986). Whether a fact is material or not depends on the substantive law at issue in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action." *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). The facts in this case are not genuinely in dispute. Where they are disputed the Court will allow all inferences in favor of Ms. Williams.

## II. TILA and the Regulations.

In 2010, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act (commonly known as the Dodd-Frank Act), which included certain amendments to the Truth in Lending Act (TILA).[3] Relevant to this action, Congress enacted 15 U.S.C.A § 1638(f), which requires creditors (or their servicers) to provide periodic statements for residential mortgage loans, which statements must include:

(A) The amount of the principal obligation under the mortgage.

(B) The current interest rate in effect for the loan.

(C) The date on which the interest rate may next reset or adjust.

(D) The amount of any prepayment fee to be charged, if any.

(E) A description of any late payment fees.

(F) A telephone number and electronic mail address that may be used by the obligor to obtain information regarding the mortgage.

---

[3] H.R. 4173.

(G) The names, addresses, telephone numbers, and Internet addresses of counseling agencies or programs reasonably available to the consumer that have been certified or approved and made publicly available by the Secretary of Housing and Urban Development or a State housing finance authority (as defined in section 1441a-1 of Title 12).

(H) Such other information as the Board may prescribe in regulations.

15 U.S.C.A § 1638(f) (West).

The periodic statement requirement is implemented by Regulation Z, 12 C.F.R. § 1026.41, which requires that a servicer "shall provide the consumer" the periodic statements. 12 C.F.R. § 1026.41(a)(2). The Rule also provides for an exemption to the requirement for periodic statements for certain consumers in bankruptcy. Specifically, it provides:

Certain consumers in bankruptcy—

(i)     Exemption. Except as provided in paragraph (e)(5)(ii) of this section, a servicer is exempt from the requirements of this section with regard to a mortgage loan if:

(A) Any consumer on the mortgage loan is a debtor in bankruptcy under title 11 of the United States Code or has discharged personal liability for the mortgage loan pursuant to 11 U.S.C. 727, 1141, 1228, or 1328; and

(B) With regard to any consumer on the mortgage loan:

(1) The consumer requests in writing that the servicer cease providing a periodic statement or coupon book;
(2) The consumer's bankruptcy plan provides that the consumer will surrender the dwelling securing the mortgage loan, provides for the avoidance of the lien securing the mortgage loan, or otherwise does not provide for, as applicable, the payment of pre-bankruptcy arrearage or the maintenance of payments due under the mortgage loan;
(3) A court enters an order in the bankruptcy case providing for the avoidance of the lien securing the mortgage loan, lifting the automatic stay pursuant to 11 U.S.C. 362 with regard to the dwelling securing the mortgage loan, or requiring the servicer to cease providing a periodic statement or coupon book; or
(4) The consumer files with the court overseeing the bankruptcy case a statement of intention pursuant to 11 U.S.C. 521(a) identifying an intent to surrender the dwelling

securing the mortgage loan and a consumer has not made any partial or periodic payment on the mortgage loan after the commencement of the consumer's bankruptcy case.

12 C.F.R. § 1026.41(e)(5). The parties in this case do not dispute that Selene as the servicer was under a continuing obligation to send periodic statements, and that the Subsection (e)(5) exemption does not apply because Ms. Williams did not abandon the property in her Plan, and she did not request that statements not be sent.

Finally, the Rule provides for modified periodic statements to consumers in bankruptcy, as follows:

> Modified periodic statements and coupon books for certain consumers in bankruptcy. While any consumer on a mortgage loan is a debtor in bankruptcy under title 11 of the United States Code, or if such consumer has discharged personal liability for the mortgage loan pursuant to 11 U.S.C. 727, 1141, 1228, or 1328, the requirements of this section are subject to the following modifications with regard to that mortgage loan:
>
> (1) Requirements not applicable. The periodic statement may omit the information set forth in paragraphs (d)(1)(ii) and (d)(8)(i), (ii), and (v) of this section. The requirement in paragraph (d)(1)(iii) of this section that the amount due must be shown more prominently than other disclosures on the page shall not apply.
> (2) Bankruptcy notices. The periodic statement must include the following:
> (i) A statement identifying the consumer's status as a debtor in bankruptcy or the discharged status of the mortgage loan; and
> (ii) A statement that the periodic statement is for informational purposes only.
> (3) Chapter 12 and chapter 13 consumers. In addition to any other provisions of this paragraph (f) that may apply, with regard to a mortgage loan for which any consumer with primary liability is a debtor in a chapter 12 or chapter 13 bankruptcy case, the requirements of this section are subject to the following modifications:
>
> (i) Requirements not applicable. In addition to omitting the information set forth in paragraph (f)(1) of this section, the periodic statement may also omit the information set forth in paragraphs (d)(8)(iii), (iv), (vi), and (vii) of this section.
>
> (ii) Amount due. The amount due information set forth in paragraph (d)(1) of this section may be limited to the date and amount of the post-petition payments due and any post-petition fees and charges imposed by the servicer.
>
> (iii) Explanation of amount due. The explanation of amount due information set forth in paragraph (d)(2) of this section may be limited to:

      (A) The monthly post-petition payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow;
      (B) The total sum of any post-petition fees or charges imposed since the last statement; and
      (C) Any post-petition payment amount past due.

(iv)   Transaction activity. The transaction activity information set forth in paragraph (d)(4) of this section must include all payments the servicer has received since the last statement, including all post-petition and pre-petition payments and payments of post-petition fees and charges, and all post-petition fees and charges the servicer has imposed since the last statement. The brief description of the activity need not identify the source of any payments.

(v)   Pre-petition arrearage. If applicable, a servicer must disclose, grouped in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

      (A) The total of all pre-petition payments received since the last statement;
      (B) The total of all pre-petition payments received since the beginning of the consumer's bankruptcy case; and
      (C) The current balance of the consumer's pre-petition arrearage.

(vi)   Additional disclosures. The periodic statement must include, as applicable:

      (A) A statement that the amount due includes only post-petition payments and does not include other payments that may be due under the terms of the consumer's bankruptcy plan;
      (B) If the consumer's bankruptcy plan requires the consumer to make the post-petition mortgage payments directly to a bankruptcy trustee, a statement that the consumer should send the payment to the trustee and not to the servicer;
      (C) A statement that the information disclosed on the periodic statement may not include payments the consumer has made to the trustee and may not be consistent with the trustee's records;
      (D) A statement that encourages the consumer to contact the consumer's attorney or the trustee with questions regarding the application of payments; and
      (E) If the consumer is more than 45 days delinquent on post-petition payments, a statement that the servicer has not received all the payments that became due since the consumer filed for bankruptcy.

12 C.F. R. 1026.41(f). The parties in this case agree that Selene's periodic statements complied with the Rule's requirements for modified statements for consumers in bankruptcy. *See*

Plaintiff's Memorandum in Support, Ex. 2 (periodic statements, including bankruptcy language). The Plaintiff maintains, however, that Selene violated the Rule by sending the statements to her attorney, and not to her, for the period April 2022 through February 2023.

### III.    Standing (the Particularized Injury Requirement).

The parties dispute whether sending the periodic statements to Ms. Williams' counsel, despite her and her counsel's entreaties that they be sent directly to her, violated TILA. Ms. Williams argues that the plain language of Regulation Z ("shall provide the consumer") requires that the periodic statements be sent to her, particularly in light of her and her counsel's consent to Selene communicating with her directly. Selene argues that the issue is more nuanced. It suggests that it could be held liable under the Fair Debt Collection Practices Act (FDCPA) for communicating directly with a represented party, and that to the extent that its counsel may be involved, counsel is prohibited from communicating directly with a represented party. *See* 15 U.S.C.A § 1692c(a)(2) (West); Virginia Rule of Professional Conduct 4.2. In both cases, however, an attorney is permitted to communicate with a represented party with the consent of the other attorney. 15 U.S.C.A § 1692c(a) ("Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction"); Rule 4.2 ("unless the lawyer has the consent of the other lawyer or is authorized by law to do so"). Still, it is not unheard of for servicers to be sued under the FDCPA for communicating directly with represented parties, so Selene suggests that it needs to tread lightly in this area. *See, e.g., Block v. Seneca Mortg. Servicing*, 221 F.Supp. 3d 559 (D.N.J. 2016).[4]

---

[4]    In *Block*, the District Court held:

> "Defendant Fay [the servicer] was required by 15 U.S.C. section 1638(f), as implemented by 12 C.F.R. § 1026.41, to send Plaintiff monthly account statements detailing the status of her loan. Congress clearly did

Before reaching the issue of communication with a represented party (with consent), though, the Court must address Selene's argument that the Plaintiff lacks standing to maintain her TILA claim because she has not suffered any real injury. The Supreme Court has held that standing requires: (1) an injury in fact; (2) that the injury is fairly traceable to the conduct alleged; and (3) that the conduct is likely to be redressed by a favorable ruling. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (2006). In 2016, the Court issued its opinion in *Spokeo v. Robins*, 578 U.S. 330 (2016). In *Spokeo*, the plaintiff alleged certain violations of the Fair Credit Reporting Act (FCRA), but failed to identify any harm resulting from the alleged violations. *Id*. at 342. The Court began its opinion by noting that standing is a rooted in the Article III case or controversy requirement. *Id*. at 337. The Court held that the injury requirement is the "first and foremost" of the three elements of standing, and that the plaintiff must demonstrate an injury that is "concrete and particularized," not conjectural or hypothetical. *Id*. at 339 (quoting *Lujan*, at 560). In the end, the Court remanded the case to the Ninth Circuit for further examination of the plaintiff's standing. *Id*. at 343.[5]

---

not intend compliance with its mandate, to send account statements to the consumer as opposed to the consumer's counsel, to automatically subject Defendants to liability under the FDCPA, § 1692c(a). Accordingly, Plaintiff's § 1692c(a) claim is dismissed."

221 F. Supp.3d, at 590. *See also Hill v. DLJ Mortg. Capital, Inc.,* 2016 WL 5818540, *9 (E.D.N.Y. 2016), *aff'd* 689 F.App'x 97 (2d Cir. 2017) ("If a debt collector is not liable under the FDCPA for sending communications to a consumer in default of a mortgage loan in compliance with the TILA's implementing regulation, Regulation Z, including periodic mortgage statements sent pursuant to 12 C.F.R. § 1026.41, even after the consumer requested that it cease further communications with her pursuant to 15 U.S.C. § 1692c(c), there is no basis for imposing FDCPA liability upon it for complying with Regulation Z absent a 'cease communication' notice by the consumer.")

[5] On remand, the Ninth Circuit held that the plaintiff did have standing, arising from the potential for reputational injury as a result of the dissemination of inaccurate information in his credit report. *Robins v. Spokeo, Inc*., 867 F.3d (9th Cir. 2017) ("Even if their likelihood actually to harm Robins' job search could be debated, the inaccuracies alleged in this case do not strike us as the sort of 'mere technical violation[s]' which are too insignificant to present a sincere risk of harm to the real-world interests that Congress chose to protect with FCRA.") This is consistent with the Supreme Court's later holding in *Ramirez,* discussed below.

Five years later, the Court issued its opinion in *Transunion, LLC v. Ramirez*, 141 S.Ct. 2190 (2021). The *Ramirez* case also involved alleged violations of FCRA. The class members consisted of 8,185 individuals, of which only 1,853 members had inaccurate information on their credit reports disseminated to creditors. *Id.* at 2197. The remaining 6,332 class members' information was not disseminated. *Id.*

The Court held in *Ramirez* that, for the 1,853 class members, the reputational harm that they may have suffered as a result of dissemination of the inaccurate information was sufficiently concrete (albeit intangible) to satisfy the injury in fact requirement. *Id.* at 2208. *For* the rest of the class members, however, the "mere risk of future harm" was insufficient. *Id*. at 2211. Further, the Court held that the 6,332 class members failed to prove as a factual matter that there was a genuine risk of dissemination at some point in the future. *Id*. at 2212. *Ramirez* recognized that intangible harm could constitute particularized, concrete harm for purposes of Article III standing. On the other hand, the mere risk of future harm will not suffice. Under both *Spokeo* and *Ramirez*, the violation of a consumer protection statute alone, without consequent harm, cannot provide standing. Both *Spokeo* and *Ramirez* require the courts to look to harms traditionally recognized by American law.[6]

---

[6] The Fourth Circuit recently issued an opinion in the case of *Kiviti v. Bhatt,* __ F.4th __, 2023 WL 5963612 (4th Cir. Sept. 14, 2023). In *Kiviti,* the Fourth Circuit held that parties may not create, or manufacture, finality for purposes of an appeal by, for example, dismissing one unresolved count of a complaint in order to have an appeal decided on another count. The Fourth Circuit noted that "before a bankruptcy case is referred to a bankruptcy court, the case must satisfy Article III." *Id.* at *7. The Court went on to say, however, that "[o]nce a case is validly referred to the bankruptcy court, the Constitution does not require it to be an Article III case or controversy for the bankruptcy court to act." *Id*. The latter statement may call into question the entire standing discussion, which turns on Article III's requirement of a case or controversy. The Fourth Circuit, however, did not imply that the case or controversy requirement is no longer important in the context of non-core proceeding proceedings before the bankruptcy court. No case to the Court's knowledge holds in the consumer protection context (TILA, FCRA, etc.) that standing is unimportant when the claims are brought in the bankruptcy court. It would be highly surprising if this Court's jurisdiction exceeded that of the District Court (which referred the bankruptcy case in the first place) on

In this case, the Plaintiff does not allege that her home was at risk of a foreclosure. She does not allege that she ever missed a monthly mortgage payment or that she incurred any late fees as a result of Selene's decision to continue to send her periodic statements to her attorney. She argues that Selene made it "more difficult" for her to pay her mortgage, but that kind of vague allegation is what *Spokeo* rejects. She suggests that Selene was under an obligation to perform its duties "in a workmanlike manner," but the 6,332 class members who were out of luck in *Ramirez* could have said the same thing, that Transunion didn't perform as it should have. To say that Selene in this case did not perform as expected is to allege nothing more than a violation of TILA without any consequent harm.

The Plaintiff relies on the recent Fourth Circuit case, *Garey v. James S. Farrin, P.C.*, 35 F.4th 917 (4th Cir. 2022). In *Garey,* the plaintiffs claimed that the defendants, who were personal injury attorneys, obtained their personal information from accident reports in violation of the Driver's Privacy Protection Act (18 U.S.C. § 2724(a)). *Id*. at 920. The Fourth Circuit held that the plaintiffs had standing because their privacy was invaded. *Id.* at 922. Harm to privacy interests, essentially the right "to be let alone," the Court held, traditionally has been recognized as a cognizable harm in American law. *Id*. (internal citation omitted). In this case, however, Ms. Williams cannot claim that her privacy has been invaded or harmed in any way. There is no suggestion that Selene accessed any of her private information or published anything about her to third parties. In short, Ms. Williams has no concrete damages – late fees assessed, nor property

---

a non-core, TILA claim. The Court, therefore, views standing to be a continuing requirement, whether couched in constitutional (Article III) or statutory (TILA) terms.

lost – nor has she suffered any intangible harms traditionally recognized under American law such as an injury to her reputation or privacy.

Finally, the Plaintiff argues that the Court should exercise its powers under Bankruptcy Code Section 105(a) to order Selene to send the periodic statements directly to Ms. Williams. 11 U.S.C. § 105(a). The Supreme Court has cautioned that the exercise of the Bankruptcy Court's powers under Section 105(a) needs to be tethered to some other provision of the Bankruptcy Code. *Law v. Siegel*, 571 U.S. 415 (2014). The Court noted: "We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.'" *Id*. at 421 (quoting *Norwest Bank Worthington v Ahlers*, 485 U.S. 197, 206 (1988). In this case, Selene's decision to send the periodic statements to counsel did not violate Bankruptcy Rule 3002.1, which requires lenders to file notices of changes in payment terms. Indeed, Ms. Williams' bankruptcy case is now at an end, apart from the resolution of this litigation. The Court does not see the need for declaratory or injunctive relief to close out this bankruptcy case.

## Conclusion

For the foregoing reasons, the Court will enter a separate, final Order under which:

A. The Complaint will be dismissed for lack of standing.

B The Clerk will mail this Memorandum Opinion and the accompanying Order, or will provide cm-ecf notice of their entry, to the parties below.

Date: Oct 5 2023

Alexandria, Virginia

/s/ Brian F Kenney

The Honorable Brian F. Kenney
United States Bankruptcy Judge

Entered On Docket: Oct 10 2023

13

Copies to:

Robert R. Weed, Esq.
13800 Coppermine Rd.
Herndon, VA 20171
*Counsel for Debtor/Plaintiff*

Brandon R. Jordan, Esq.
11900 Parklawn Dr., Ste. 301
Rockville, MD 20852
*Counsel for Defendants*

Alexander Richard Green, Esq.
1275 Pennsylvania Avenue NW, Suite 420
Washington, DC 20004
*Counsel for Defendants*

John Alexander Nader, Esq.
700 12th Street, Suite 700
Washington, DC 200005
*Counsel for Defendants*